Robertson, J., (dissenting.)
—The complaint in this action alleges, that on or about the first day of December, 1855, the plaintiff and the defendants, jointly and severally, made and executed, under their respective hands and seals, a certain agreement, which is set forth therein in hac verba.
*187 The defendant Wilbur -alleged in his answer, that on or about the 1st of December, 1855, some agreement was entered into between some of the directors of a company, mentioned in the complaint, and among them the plaintiff and the defendant, to aid the company at that time, but he had no sufficient recollection, knowledge or belief, whether he executed an agreement of the same tenor in all respects as that set forth in the complaint; that according to his recollection and belief, the agreement, so signed by him, was not sealed; he denied, however, that the plaintiff indorsed certain notes, in the complaint mentioned, under and inpursuance and by virtue of said agreement, and averred that said agreement was not then in force or in possession of the plaintiff; he also alleged that the liabilities assumed by the plaintiff for such company were not assumed under such agreement.
It would be a strained construction which should make . these allegations in the answer either an admission or denial that the defendant signed or executed the identical instrument named in the complaint, being a matter as to which the plaintiff was entitled, to a positive admission or denial, within the defendant’s own knowledge. On appeal, this court cannot deprive the plaintiff of the right guaranteed under the Code, that what he has alleged in his complaint, and is not properly controverted in the answer, is admitted and cannot be controvered on the trial.
But if the admissions in the answer are more closely examined, they will be found to concede the execution by the defendant of some written instrument between him, the plaintiff and other directors of the company, to aid the company, but deviating in some respects from that set forth in the complaint. Not a word is said of any conditional execution, or contingent liability.
On the trial, the defendant Wilbur was asked whether he signed such agreement with the understanding and information that other directors were to sign it, and whether he signed it in reference to a resolution of the Board of Directors passed November 12,1855. This question was objected *188 to and excluded under an exception. Another witness (Carryl) was asked whether the agreement was to have been executed by any other directors, or otherwise, besides those who had signed it; which question was also excluded. It is assumed that the answers to these questions, in the affimative, would have shown that the agreement was executed and delivered by the defendant, upon condition' that others should sign it also. I do not see how that can be the result. There is a marked difference between signing a paper with the information that it was -to be signed by others, and delivering it when signed to take effect as the deed of the party only upon condition that others signed it.
Moreover, this instrument purports on its face to be the deed of those who signed it; not of any named persons. Until signed, the intended parties to it were- not designated, and when signed, the persons so signing manifested conclusively their intention to become parties. Such signing would be the means of causing all others who signed it to believe that the subscribers had become parties, and thereby entitled to be indemnified for their own liability, and bound to contribute to that of others who should become so. It contains, substantially, a declaration in the body of the instrument, that it shall become binding, on every one who signed it, by virtue of the signing alone, whatever condition such person might verbally attach to the effect of his signature; and no man can attach to the delivery of an instrument, a condition excluded by its terms. In the case of The United States v. Leffier, (11 Pet. R. 86) if the names of the parties had been inserted in the bond, which does not appear by the report, there was nothing to prevent other names from being added, or any of those whose names were inserted, from annexing a condition to their delivery of the instrument that others should sign also. In the case before the court, they became parties merely by signing, and then absolutely and unconditionally.
But were the fact such as the defendant sought to have inferred from the testimony, he must have known it when *189 he put in his answer; or when he sought to avail himself of it on the hearing, he should have moved to amend, upon furnishing an excuse for not stating it in the first instance if he could; but it defeats every object of pleading in an action, to allow parties to offer evidence of a cause of action or defense not contained in the pleadings.
The agreement containing the covenants sued upon in this action, recites a desire by the Clinton Coal Company, of Pennsylvania, to raise a sum of money to prosecute their operations, and a proposal to raise such sum by the loan of the notes of certain of its directors, indorsed by others, none of whose names are mentioned, and by the indorsement of its own notes by such directors. It does not specify the amount of such money, or when, how, or by whom, such proposal was made and accepted.
By such agreement, those who are therein described as “ the undersigned directors of such companycovenant with each other, mutually, that the notes and indorsements made as therein recited, should, as between themselves, be equally binding upon all of them; and that those who did not sign such notes, or give such indorsements, should unite with those who should become liable on any note or bill given by any of such directors, in meeting and sharing such liability. It also, finally declared, that it was its true intent, that all should bear equally any responsibility assumed in raising money for such company, and pay in equal proportions any amount paid by any of “the undersignedin raising such money.
If there was any. ambiguity in such instrument as to the amount of money to be raised, or the extent of the notes to be given, it was patent on its face, it was not fixed therein; nor was there any reference made in it to any other instrument or fact by which it could be rendered more certain what sum the signers had in their minds. The terms of this instrument are as general as possible, and the closing declaration of the intent of the parties to it, is to pay in equal proportions, all amounts paid or borne by any of the signers of it in raising money for the company. It was *190 urged, on behalf of the defendant Wilbur on the trial, that such general words were limited by the recital that the company were desirous of raising a sum of money; that this meant some particular sum, and that parol evidence was admissible to prove what particular sum they were desirous of raising. The sole evidence offered for the purpose was a resolution of the Board of Directors of such company, passed on the 12th of November, 1855, authorizing the president and directors to borrow any part of $20,000 to meet the liabilities of the company on certain securities, if possible, or if not, to use the names of all the directors for the purpose. At that meeting only the plaintiff and defendant, and no other directors, were present. This resolution was excluded under an exception, and I think properly. What the sum of money was which it was intended by that instrument that the company desired to raise, was not established by proving that it passed a resolution to raise a specific sum; there was abundance of time between the passage of the resolution and the execution of the covenant for all parties to have agreed to change the amount in their own minds and leave the expression of it indefinite; and to prepare an instrument to be signed by those only who chose to make it indefinite. The law assumes that down to the moment of executing an instrument, there is room for a change of intention, so as to merge, as it is termed, all previous negotiations in the contract as executed. (Parkhurst v. Van Cortlandt, 1 J. C. R. 282, Greenl. on Ev. § 215.) When executed, it is to be interpreted by fixed rules of construction and interpretation, one of the oldest and best settled of which is, that if there is an ambiguity on its face, it cannot be rendered certain by parol evidence. (Cow. & H. Notes to Phil, on Ev. Pt. II, p. 528, n. 271, and cases cited.) I cannot understand how any subject matter of a contract can be rendered more indefinite than by prefixing the indefinite article to it without any further description. Suppose the extrinsic evidence had shown that the company had been desirous of raising two sums, how would the latent ambiguity thus *191 created be determined ? Would it be by the declarations of each party at the time of signing the instrument ? In such case, different parties might prove that they understood different sums to be intended, or else the court would be compelled to pass upon the conflicting evidence of negotiations preceding a contract. The law intends to guard against the confusion which would then arise by confining the parol testimony, which is to aid in understanding sealed instruments, to that which furnishes data for the interpretation of the words actually used, and excluding that which merely proves by their declarations or otherwise, what the parties meant by such instrument. The court is entitled to know all that the parties may be supposed to have known in regard to the subject matter of the contract; thereby to discover the sense in which they were entitled to understand its language; further than that it is not authorized to go. The knowledge that some of the directors of this company had resolved to raise a sum of money, was not necessary or relevant to show what sum of money each of the parties to the covenant in suit had in their minds when they signed it. It did not serve to interpret it, as no reference was made which confined the sum in the covenant to that mentioned in the resolution. It was 'clearly inadmissible, unless the principle is to be adopted, that a sealed instrument is not the sole repository of the intention of a party to it, but merely part of general evidence óf it, of no more weight than other parol evidence.
It was claimed on the part of the defendant, that the first notes indorsed by the plaintiff, were paid by the proceeds of the sale of certain bonds and stock which the president and treasurer of the company, two of the defendants, (Mallory and Oarryl,) agreed to hold as collateral security, for the payment at maturity, of any and all notes or indorsements that might be made under the agreement in controversy; and that after such sale and payment, the plaintiff could not make the defendants liable for any new notes indorsed by him; and to sustain this exemption from *192 liability, the defendant offered in evidence an instrument dated on the same day as the agreement in suit, and annexed to it, signed by the president and treasurer of the company, in which they agree with the directors, parties to such agreement, to hold for their benefit all unsold stock and bonds then belonging to the company, as collateral security for the notes made or indorsed under such agreement. I do not see any mode by which the continuing guaranty of that agreement ^ could be reduced thereby, even had there been the same parties to both.
The defendant Wilbur, also attempted to prove on the trial, a species of novation of the original agreement by another, in 1857, between the plaintiff, three of those who had executed it, (Mallory, Carryl and Coffin,) and two others, (Durant and Crane,) agreeing to assume the floating debt of the company, including the indorsements in question. This agreement is claimed to be shown by resolution of such parties, passed at various meetings of them as directors of such company, by a confession of judgment by the company, to secure the parties assuming such debt, and the payment of certain sums by the parties to each other to equalize their liabilities under such supposed agreement. The resolutions were passed at four meetings of the directors, held in April, (on the 16th,) in July, (on the 21st,) in August, (on the 1st,) and September, (on the 23d.) At the April meeting, a general understanding is recited in the minutes to have been had to raise money for the company on individual responsibility until coal was sold or other resources reached; each of five of the six persons supposed to be parties to such agreement, agreeing to assume $5,000 each, and make up their prorata share of the remainder to the amount of $50,000. The July resolution authorized the president to secure any person becoming liable as security, by any order, conveyance or instrument in writing; the August resolution authorized the officers to allow judgment to be entered by confession to secure advances to, or liabilities for the company; and the September resolution authorized the confession in favor of *193 Crane, one of the parties to such agreement, for moneys advanced, amounting to $50,000.
It was claimed that such evidence, if admitted, proved an assumption by the six parties to such resolution, of the floating debt of the company, “ composed of the indorsements in question,” and other matters. Every note, for whose .payment the plaintiff seeks indemnity, was dated after the April resolution, two of them after the August meeting, and one after that in September, while the whole agreement is claimed to have been made on the 16th of April, before any such indorsements were made, so that such resolutions become in fact immaterial.
The defendant Wilbur, also offered in evidence, the record of the judgment so authorized to be confessed to Crane, in September, 1851, and a declaration of trust by Crane. This declaration recites, that the judgment was given to indemnify the plaintiff for a loan in August, 1851, of upwards of $3,600, and three of the defendants,in various sums; also two notes indorsed by the plaintiff and one of the defendants, for $5,000 each, dated in July and August, 1851,'(being two of the notes in controversy in this action;) also a note indorsed by one of the defendants for $500 in June previous; and that the proceeds of such judgment were to discharge such liabilities.
There were also other instruments offered in evidence, one being an agreement between the plaintiff and a bank, in relation to the securing by him, of the notes which form the subject of_controversy here, then held by such bank; and another, an assignment executed in pursuance of such agreement. There was also a written statement offered in evidence exhibiting the amount of money lent by the plaintiff and one of the defendants before August, 1851, amounting to $3,600, and also the giving by them of their notes, dated respectively, 24th, 25th, and 29th of August, the first" for $5,000, the second and third each for $2,500; also another showing the amount paid to equalize the debt in April, 1851. The bearing' of these papers on the case, I have been unable to perceive; and I therefore think they were *194 properly excluded as well as the resolutions of the directors, the entry of the judgment, and declaration of trust before mentioned.
The liability of the defendant Wilbur, remained, under the agreement -of 1855, whatever notes composed part of any floating debt assumed in 1857; unless the responsibility of the plaintiff was discharged by the securities then taken. Any such assumption was but among the directors - themselves, and when any of them discharged their own ■liability, that of any of those who signed the agreement of 1855, immediately arose. The plaintiff neither released the company nor gave them time, nor otherwise did anything to increase the responsibility or impede the rights of the defendant. I cannot see why the plaintiff was not at liberty to take every step and amass every security he could to protect himself, provided the defendant’s rights were not affected.
Notes drawn by the plaintiff and Coffin jointly, are clearly within the agreement of 1855, which does not limit the mode of assuming the liability therein specified, except that it must be by making, accepting, or indorsing notes or bills of exchange. The defendants too are each responsible to the plaintiff for their share of what he was obliged to pay, without reference to the liability of Coffin. . They inay be entitled to be reimbursed by the latter, but that cannot alter the plaintiff’s rights under the covenant. Coffin may be liable to the plaintiff for one half of the note by joining in it, but the other defendant’s liability arises solely from the covenant.
I have been unable to find any error in the admission or rejection of evidence, or rules of law applied at the trial, and must dissent from the conclusions of my brethren, as I think the judgment should be affirmed with costs.
Judgment reversed and new trial granted, with costs to abide the event.